Case No. 22-2138 from Eastern Missouri, Greater St. Louis, Construction, Labor, et al. v. B.F.W. Contracting, et al. Mr. Dennis, when you're prepared, please proceed. Good morning, Your Honors. May it please the Court, I'm Philip H. Dennis, Dennis Law Firm, St. Louis, Missouri, representing Appellant's Defendants. Appellants would like to at least start with the type of action that we have here. September 14, 2020, plaintiffs filed their complaint beginning this action as purported fiduciaries of benefit funds citing 502 and 515 of ERISA, section 301 of LMRA, and 29 U.S.C. section 185A as their authority in five pages containing 15 allegations and five requests in their prayer. None of which alleged, as the district court states on page 2 of the memorandum and the order, that the plaintiffs alleged that the defendant has failed to meet its obligations under the collective bargaining agreement for the period January 1, 2017, through June 30, 2020. Recognizing that the dependent posed several arguments concerning his liability in this case, we state that the uncontroverted material facts support summary judgment for the plaintiffs. To reach this finding, though, the court had to ignore facts in the record supported by affidavits submitted by both parties, impermissibly weighing the evidence and accepts as true conclusory statements not supported by the evidence and statements of ERISA law. The complaint does state, after nine paragraphs of jurisdictional allegations, that the defendant was at all times materially bound by the collective bargaining agreement, which contained obligations defendants owed to plaintiffs in paragraphs 10, paragraphs 13, 14, and that the defendant's failure to fully submit to financial examination and that without this full submission, it would be impossible to know the full amount owed to plaintiffs. There are no allegations that the defendants actually owed delinquent unpaid contributions to the plaintiffs. The second paragraph of their prayer asked the court to accept the conclusions of any financial report resulting from the audited request in paragraph 1 without ever informing the court of the facts necessary for the court to determine the scope and the extent of the basis for the defendant's liability. So, arguments of the issues. Defendant BFW Contractors LLC is actually not a proper party and a non-signatory company who is not an alter ego, successor company, nor is it the registered trade name of BFW Contracting LLC. And the judgment as to them should be reversed. And the defendant dismissed from this action as it was wrongfully joined as a defendant. Now, is that based on the termination letter or exactly where does that come from, that argument you just made? Well, BFW Contractors LLC is not the signatory at all on the CBA. Are they a successor? They are not the successor. They are just another of the companies that Mr. Wilson is involved in. The proper party in this one was BFW Contracting LLC and they were the signatory. BFW Contracting is a proper party but states it's complied with all the CBA, the collective bargaining agreement, during the portion of the period it had covered employees. That would be January 2017 through mid-February 2019. And five and a half months thereafter when it had no covered employees and after July 2019 was no longer bound by the CBA, having voluntary submitted to audit and payroll records, the ones for the above period, had no duty to submit to an audit after that period. The single employee exception, what is actually uncontroverted is that defendant had only one laborer and one employee covered by the collective bargaining agreement at any time during the whole of 2019. Well, I mean, the audit suggests otherwise. Isn't that correct? The audit does, but the affidavits that support our response to motions for summary judgment were from those employees that they attempted to bring in and say that they were laborers under the agreement. They were 1099 employees and one in particular, Mr. Lemoyne Hellenkamp, was not a laborer and who wrote an affidavit stating and part of his work was part-time. The other part of his work was in a supervisory position. Doesn't that just create a genuine issue of material fact for a fact finder to find? We've got the audit saying one thing and we've got your clients, their employees saying another. Yes, and I would agree with that. In fact, I will actually be talking about that part as well, that the summary judgment was entered even though there was quite a bit and quite definitely an issue of material fact here. Yeah, you mentioned in terms of your own summary judgment motion, you mentioned and I wanted to be sure that you recognize the fact that there could be a genuine issue and that maybe neither party was entitled to summary judgment. Well, let me say this. We had quite a bit of procedure in this case before that and the affidavits from Mr. Hellenkamp and the other parties and their 1099 paperwork were produced well in advance of summary judgment work. So at that point, it was clear to everyone that what we had here and maybe not so clear to the counsel for the appellee, but what we had here was a misunderstanding of who was or how many employees there were and what their status was. But once we produced the affidavits, there was no confusion anymore. They also admit that a stable situation had developed where a defendant had no laborers. While this is on my mind, let me ask you, what's the significance of the authorization card and what was the evidence in the record about authorization cards being a part of determination of responsibility? Under the collective agreement? Yes. Well, yes, the authorization card definitely would be a function or a part of showing responsibility if we were actually a company that was under the collective bargaining agreement. The problem was at this point, Mr. Wilson and his company had all but stopped doing business. They had a big fire. It destroyed quite a bit. And he had no more contracts and no more situations where he had employees that were outside of the single employee exception. What basically he ended up doing in some of the cases was subcontracting where he was just a supervisor. In which case, that authorization that's under the collective bargaining agreement binds you if you are an employer under their definition with employees that he has obligations to. And their own audit shows that it found the two 1099 contract workers in January working a total of 54 hours between them and the one working in February for 12 hours were not in the payroll records as employees, were not permanent employees. This meets the requirements of the single employee exception to the requirement that an 8F employer must adhere to the collective bargaining agreement during its term. BFW contract was an 8F employer having signed this collective bargaining agreement in 2015 when it had no employees. The single employee union began when the original collective bargaining agreement term ended at the end of February 2019. And thus, BFW was never bound by the successor BFA. Counsel, I have a legal question I'm trying to track down. But either in the description of the rule or the rule itself, it says when a unit consists of no more than a single permanent employee at all material times. What do those words at all material times mean? Do they mean during the entire pendency of the collective bargaining agreement? Do they mean during a particular period? Does it mean a lack of permanence to it, which is I've now changed in the middle of the agreement, only have one or zero employees, and that's going to be my permanent state? I don't know what that means, and I'm just wondering if you do. There are two answers to that in this case. First of all, Mr. Wilson had made it clear at the point where the fire started and the other problems happened and where he was backscaling that he could not continue, that he had no more employees that would be subject to any extensions or any renewals. So at that point, that's an effective time. But also at the time that they're trying to charge him for, he had no employees that would fit, and therefore, that's the other effect or time period that we're talking about, 2019. They're challenging him over what was going on with his company in 2019. In 2019, we can tell you he had no employees that would have qualified under the collective bargaining agreement. What would have happened, though, say the collective bargaining agreement went from 2018 to 2020, and in the middle of 2019, he decides, for whatever reason, runs out of money, whatever, decides I'm not going to have any employees anymore. Would you still qualify for the single employee exception? Well, and so then the first thing is, do you have an obligation to contribute? What are you contributing to? If you don't have an employee, then the union didn't do anything for him. Let's say it's one employee. You have one employee, and that's going to be the permanent state of affairs. So the question is, do you have a contribution from that one employee? I'd say no. I'd say that that one employee, in fact, is basically the exception. Well, do you have to repudiate? In other words, do you have to take any action in order to get the exception? I don't believe that there was any lingering duty, and we're talking about a successor contract. The judge earlier, Justice Earlier, spoke about if we were in the original contract, but this is a successor. There's no lingering duty to negotiate because we had only a single employee. I thought maybe I should be more specific. Under Section 8F, you had to notify the union that you were repudiating because you were down to one employee. Now, maybe I'm misreading it. Well, and also there, we did actually communicate termination. The termination, they say, was not done in adherence with mechanisms we say it was. That was a difference of opinion there, but some districts have recognized the termination defense, and there's no rationale for binding them to a contract obligation that didn't exist because he didn't have any employees then. This Court itself has indicated it's not opposed to supporting termination defense under the certain circumstances, and I think that was a Twin City Pipes Trade Service Association case we cited. The signaling, the agreement, well, let me say this. Counsel, is it factually disputed? Because I think the appellees take the position it's not factually disputed that there were two or three covered employees at the time in question. The employees, two of the employees were 1099. The other one was the LeMoyne-Hellenkamp who was part-time except when he was working as a supervisor. So in both of those circumstances, he was not a laborer that would be subject to the union and under the CBA agreement. So, yeah, there is evidence of three different employees. The three different employees were outside of the scope of the CBA and the definition under the CBA. A 1099 employee definitely is not a union employee, especially not a part-time one. But LeMoyne-Hellenkamp, who has participated for a long time with Mr. Wilson as a supervisor and who was on several of the jobs as a supervisor of other companies, definitely does not fall under the category that the opposing or that the appellee has brought up. It's very difficult because when you're analyzing, all you're seeing is a spreadsheet with people's names on them. But our affidavits in support of this have shown that these people were actually not laborers under the collective bargain agreement. Counsel, you're well within your rebuttal. You can reserve your remaining time or you can continue your argument. Yes, sir. I would like to reserve. All right. Thank you. I'm sorry. Never mind. I'll do it on reserve. Thank you. Ms. Martin. Good morning. I think that perhaps the place to start with this in responding to the appellant's arguments is to remind the judges what ERISA is designed to do. That provision is designed to make it efficient and a less onerous use of participant and beneficiary resources, which is what those funds are controlling, when it comes time to collect the money owed by employers who have agreed with unions to contribute on behalf of their employees to these trust funds in order to obtain benefits for those trust funds. Most of the discussion that appellant has made relating to Sections 9A and Sections 8F are defenses that apply specifically to whether a union can enforce a collective bargaining agreement. Most frequently, those are coming up in situations where a union is seeking an employer to continue bargaining with it or is asking it to arbitrate. With almost no exceptions, which I'll mention in a minute, the circuit courts of appeals who have dealt with the issue have made it clear that defenses that apply to the union in that context aren't applicable to the benefit funds in an ERISA collection action because that contrasts or conflicts with the purposes of ERISA. Having said that, I will very briefly mention this 8F, 9A distinction that continues to be made. The appellees have not taken the position that this was an 8F contract. We have taken the position only for purposes of argument. The collective bargaining agreement itself contains the language that the Board has required to establish that an arrangement is actually a 9A arrangement. So that's an issue that would need to be discussed or dealt with between the union and between the employer and is not something that's relevant to the fringe benefit contribution part of this discussion. I mention this because part of what has been discussed in the authorization card question that Judge Smith asked that I will answer in a minute is a very small part of it. The benefit funds are the servicing agent, shall we say, for the collection of all of the amounts owed under the collective bargaining agreement. It just makes it easier for employers to pay all of the additional amounts owed, the fringe benefit amounts, the supplemental dues amounts, and there are also some employer organizations under there. So they make the collection. Will you help me with the record? Is the record clear and what do you cite in the record that there were employees who needed to have these dues paid over during the relevant time period? So now we're talking about the audit. So our evidence is the audit. We have an independent auditor who goes to our employers on a three-year cycle basis, roughly, and audits the records. When you go in, when the auditor goes in, he discusses his audit report with the representative of the employer, which was done in this case. The report is in the record. There were two separate trips, shall we say, by our accountant to the employer. His notes are attached to the report. When a report is finished, the employer has a period of time to review and get back to our auditor and respond to the thing. One of the individuals that has been discussed quite a bit is Mr. Hellenkamp. He was performing labor's work throughout the early years. The employee was making contributions on his behalf throughout the earlier years. And it wasn't until after the termination attempt that the employer said he was no longer a laborer. And it's important also to recognize there that the question isn't whether somebody was a laborer or a member of the laborer's union. The contract requires, the contract's in the record, the collective bargaining agreement, requires that contributions be made on behalf of people performing covered work. The covered work is described in there. When the auditor went to perform the audit, Mrs. Wilson told the auditor that they had a period where they were shut down in 2019 due to a fire and some reorganization efforts. When they came back into business, they were doing city demolition work. Demolition work is covered work. Mr. Hellenkamp was still working there. There was still an authorization card on file for Mr. Hellenkamp. So in the absence of evidence that there was something else being done, which was not received at that time, he was considered to be in the report. And I take your point on that. And I understand maybe why the auditor did that. But there is not an absence of evidence in the district court record. I mean, there are additional affidavits that have been submitted. My concern is if the audit, you know, made an assumption based on a lack of evidence when the evidence came in, why isn't this a material factual dispute at this point? So I don't think, as I recall, the only evidence that came in at the district court level prior to the full briefing of the summary judgment motions were affidavits from the owners saying this is what people were doing. And generally speaking, the funds don't accept that sort of evidence. There's other ways of providing the evidence. Someone could provide a statement. This man was still around. The funds don't. The district court certainly could, right? Sure. I think that they could. But I don't think that that evidence, I assume, you know, obviously not in the district court's mind, that the district court also did not consider that evidence to be persuasive. The problem for the funds is when it comes to that sort of thing, and this is also true with this idea that people can just repudiate at will and have it be effective against the funds, is that the funds have no way first of knowing that that's what's going on and they're continuing to assume that benefits are owed to people that work for these employers. The other thing is any time, if the fund goes out to perform, it's required by a fiduciary standards audit on employers, and what we get back are statements from employers that just say things like, oh, no, they didn't work doing that work, or he was a supervisor. We need the evidence from the people that performed the work. There are work orders you can submit detailed. If you worked, if employee A works for employer B, employer B will give you an invoice, or you give employer B an invoice, depending on however that arrangement is working, that should describe what the work is. It would be easy for an employer who maintains those records to show that. It's much more, in fact, that's the way it's usually been done. In our audits, it's been the way the district courts have handled it consistently, and the reason, again, for that is that the employers are the ones who have those records in their control. Those aren't records we have or that we're not able to go to employer B and say, can you tell me what employer A did for you and who worked there. Were authorization cards given on the employees? So I don't have, what I can tell you is this about Mr. Hellenkamp, and that is that Mr. Hellenkamp worked there previously, has worked there consistently from the beginning of the collective bargaining agreements effective date, and the supplemental dues payments were made during that period of time. So I would assume that the FW had the authorization card that he signed with the union to make those contributions. The other employee Is there, what's the record evidence of? Of whether they had the authorization card? That was not put into evidence by either party. That argument came up later, and I'm not sure it was raised even at the district court level. So I don't have them, the authorization cards. I can tell you they were paying supplemental dues prior to the reorganization. On Judge Kobus' question, what does, and I ask this to the proposing counsel, what does that all material times mean in the standard? Yeah, that's a really good question, and I think that that's a really hard question to answer. You know, you've likely read the cases that discuss the Section 8F repudiation situation, and they often talk about the difficulty of meeting that standard in the construction industry. There are numerous, the laborers' funds have hundreds of signatory contractors. Some are large. Many are very small. Many of them only work a little bit every year. Some of them work seasonally. So there are long periods of time where no work is being done, and there are other periods of time where only a little bit of work is being done. I don't think that the question of a line that can easily be discerned is something that is, that a court has opined on, not that I could find. And I think primarily that's because the issue is presented as a matter of primary jurisdiction to NLRB that is, you know, authorized to make a decision about whether you've got on the front end an 8F contract at all or is it a 9A contract. So that obviously hasn't happened in this case. From the perspective of the funds, at least, that has not been an issue of primacy because we believe, and we will continue to assert based on case law in this circuit, in the Seventh Circuit, in the Second Circuit, and even to some extent in the Ninth despite that Westlake case, that ERISA funds are not bound by the defenses that the employer and the union have vis-à-vis each other, that it's a separate sort of action that can't be impacted by that. Let me ask you this. Suppose we find, as Judge Kobus mentioned, that there is some conflicting evidence in the record. And we've got to go back and look at it and figure that out. But if there's conflicting evidence in the record, is the proper thing to do to send it back down? That's why I was asking about at all material times. I was trying to figure out if there was something else going on there. But would that be the appropriate thing, is to send it back to the district court to deal with those genuine issues? It would be the appellee's position that BFW has missed the boat on whether or not its agreement is an 8F or 9A and it can use that by not going to the board to get that figured out. That's an argument that came up much later in the discussion here in the lower court, and that wasn't done. The termination letters in the record, they didn't terminate because they only had one or fewer employees. The termination was because they were taking the business in a different direction. That wasn't served on the fund initially back in July of 2019, but it certainly wouldn't have put any party on notice that what was being done was a repudiation, particularly in light of the fact that numerous contractors have one or fewer employees from time to time. I do want to say the other issue on the authorization cards in terms of the signature part of that. Under the collective bargaining agreement, it is the employer's obligation to make sure those cards are obtained and that they're making the supplemental dues payments, which is a percentage of the employee's wages. It's not employer money. When an employer doesn't do that and the funds or the union, I assume, sues for those dues, that's the measure of damages. So if even they did not have the authorization cards back then and were able to withdraw the money pursuant to those, had we sued knowing that at the time, the argument would have been you violated your contract by not having them and you owe that money as a function of the damage that was created by you failing to comply with the collective bargaining agreement. I do, again, just mention that's about $1,500 of the audit. It's really a small part of it. The larger part is the fund amount. I want to mention one other thing on the 21099 employees because I think that's been mentioned quite a bit and the fact that Mr. Hellenkamp might have been performing supervisory duties as well or as something else on these demolition jobs. Again, the contract doesn't care what you are. If you are being hired by an employer to perform the work and the work is covered work, the contributions are owed. That would be true even if you were subcontracting. There is a way around that in there if it's a subcontracting arrangement where the subcontractor will agree it's complying and paying prevailing wage and the like, but that's not what we're talking about. We're talking about individuals hired either as employees or independent contractors by the employer. Those folks doing work directly for the employer, if they're doing covered work, must have contributions made on their behalf. Their status as a 1099 isn't going to matter in that context. Unless the judges have any further questions, I'm just going to leave the rest of my time and thank you for your time. Thank you. Thank you, Ms. Martin. Mr. Dennis, your rebuttal. Thank you, Your Honor. The one thing I'm going to do is take this into an analogy. The union is a candy store and I go to the union and say, any of my kids that come in, I'm going to pay for their candy. Just send me a bill. At the end of a month, COVID hits, the store has no kids coming in at all. And yet the store comes to me and says, can you please pay me? And I said, but remember our agreement said, if any of my kids come in and get candy, I will pay. None of my kids came in. There's no candy being sold. There's nothing for me to pay here. None of the employees took advantage of any work from BFW that was union-based. The work that they did, Lemoine, who put in his affidavit, was as a supervisor. Why? Because, as he said, I no longer want to be a laborer. That is his right. He has gotten to the point in his life where he wanted to just do supervisor work. Why? Because that's his business and his right. BFW, after having the fire that destroyed almost everything for them, was no longer anxious to do this kind of big scope job that was implicated in the CBA. What they decided to do at that point is to take only small jobs, unless his people like Lemoine decided that they wanted to go back to being full-time workers. None of them would. They were all through with it. At that point, he had no kids going to the candy store to get candy. Therefore, what the union and ERISA is saying is, and I'm sorry if I may just finish this off, pay us anyway. It doesn't seem fair. Thank you, Mr. Dennis. Thank you also, Ms. Martin. The Court appreciates both counsel's participation and argument before the Court and will take your case under advisement. Thank you, Your Honor.